Mohammad Ahmed
Residence:
18 Lisa Lane
Staten Island, New York 10312
Mailing Address:
13242 Laurel Lane
King George, Virginia 22485
(703) 836-6200
CourtHearing1179@gmail.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
## BROOKLYN

| | |
|---|---|
| MOHAMMAD MOKHTAR AHMED<br>A Natural-Born United States Citizen<br>Honorable United States Marine<br>United States Marine Corps Veteran<br>A Service-Connected United States Veteran<br><br>Plaintiff Pro Se,<br><br>V.<br><br>Defendants,<br><br>JOHN MILLER, NYPD, Deputy Commissioner<br>of Intelligence and Counterintelligence,<br>in his official Capacity;<br><br>Serve: 1 Police Plaza Room 110(c) NY, NY 10038<br><br>NYPD INTELLIGENCE BUREAU OFFICER<br>JOHN DOE FIRST<br>in their official capacity;<br><br>NYPD INTELLIGENCE BUREAU OFFICER<br>JOHN DOE SECOND<br><br>Serve: New York City Law Department Counsel<br>100 Church Street<br>New York, NY 10007 | **AMENDED<br>COMPLAINT**<br><br><br>**JURY TRIAL<br>REQUESTED** |

1

CHARLES H. KABLE IV,
Director of the Terrorist Screening Center,
Federal Bureau of Investigation,
in his official capacity, a Person;

Serve: Office of the General Counsel
U.S. Department of Justice
950 Pennsylvania Avenue,
NW Washington, DC 20530-0001

SPECIAL AGENT GEORGE KELLER,
Special Agent Federal Bureau of Investigation,
in his official capacity a Person;

Serve: Office of the General  Counsel
U.S. Department of Justice
950 Pennsylvania Avenue,
NW Washington, DC 20530

DONALD K. DAVIS,
A County Manager for Jefferson County, Colorado,
in his official capacity a Person, also in his
individual capacity; a person

Serve: Counsel
500 Jefferson County Parkway
District Attorney Building Golden, CO 8040

7223 GAMMA LLC
2123 East 19th Street
Brooklyn, New York 11229

Serve: The, LLC
2123 East 19th Street
Brooklyn, New York 11229

ANDREW CHERTOFF
1421 Glenwood Rd
Brooklyn, NY 11230
Serve: General Counsel
1421 Glenwood Rd
Brooklyn, NY 11230                    Defendants.

2

## I. FIRST AMENDED COMPLAINT

COMES FORTH, Your Plaintiff, *pro se*, Mohammad Mokhtar Ahmed submits this Amended Complaint by and in accordance with Federal Rules of Civil Procedure, and the Local Rules of United States Districts Courts for the Southern and Eastern Districts of New York 1.5(d) and 28 U.S.C. § 1654.

## II. NATURE OF THIS ACTION

1. This is an action arising under the First, Fourth, Fifth, Eighth and Fourteenth Amendment to the Constitution of the United States and for violations of 15 U.S.C. § 1681f, 15 U.S.C. § 1681i, 15 U.S.C. § 1681l, 15 U.S.C. §1681u(g), 15 U.S.C. §1681u(k).

2. Plaintiff seeks damages pursuant to 28 U.S.C. § 1343(a)(4), 28 U.S.C. § 1357, 15 U.S.C. § 1681n, 15 U.S.C. § 1681o, 15 U.S.C. §1681u(j)(1)(2)(3)(4), 29 § 1109, 50 U.S. Code § 1810, *ad quod damnum*. Plaintiff also seeks injunctive relief through Mandamus pursuant to 28 U.S.C.§1361 and All Writ Pursuant to 28 U.S.C.§1651

## III. JURISDICTION AND VENUE

3. Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution.

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, 42 U.S. Code § 1983, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,

403 U.S. 388 (1971), the United States Constitution and federal common law and 15 U.S.C. § 1681p. And a substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of New York.[1]

5.      Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because (1) Defendants are agencies of the United States or officers or employees thereof acting in their official capacity or under color of legal authority; (2) no real property is involved in this action, and; (3) the Defendants all reside and maintain offices within this district.

## IV. LEGAL STANDINGS

6.      This Complaint is able to commence based on information provided by Memorandum Opinion and Order by the Honorable Judge Trenga in *Elhady vs Gable. See United States District Court, Eastern District of Virginia, Case No. 1:16-cv-00375-AJT-JFA.*

7.      This Complaint is in accordance with the opinion written and then published by the Honorable Judge Wilkinson from the United States Court of Appeals for the Fourth Circuit, in which the Honorable Judge Richrdson and the Honorable Judge Quattlebaum joined and decided March 30, 2021. regarding procedural due process claims, and also substantive due process claims.

---

[1] *(Plaintiff filed original complaint with U.S. District Court for the Southern District based on NYPD Counterintelligence Defendants, John Miller residency in Southern District)*

4

8.     Your Plaintiff files a preponderance of concrete evidence of fact that Your Plaintiff suffered concrete injury and was concretely harmed by statutory and procedural violations by all Defendants, and File this Complaint in accordance with the statement written by the Honorable Justice Kavanaugh of the Supreme Court of the United States written in TransUnion vs. Ramirez., *"for Article III Standings Only plaintiffs concretely harmed by a defendant's statutory violation have Article III standing to seek damages against that private defendant in federal court. Pp. 6–27."* 594 U. S. ____ (2021)

9.     In a case invoking state secret privilege, The Ninth Circuit Court panel held that the Fourth Amendment injunctive relief claim against the official-capacity defendants should not have been dismissed because relief was available under the Constitution to remedy the alleged constitutional violations. Fazaga v. FBI, No. 12-56867 (9th Cir. 2020)

10.     United States v. Reynolds, 345 U.S. 1 (1953) As used in Rule 34, which compels production only of matters "not privileged," the term "not privileged" refers to "privileges" as that term is understood in the law of evidence. When a claim of privilege against revealing military secrets is invoked, the courts must decide whether the occasion for invoking the privilege is appropriate, and yet do so without jeopardizing the security which the privilege was meant to protect.

11.     Procedural due process claims require showing that the Defendants

5

violated constitutionally protected liberty interests. Substantive due Process claims require showing the damages from infringement on fundamental constitutional liberties .

12.    Plaintiff consistently evidenced his constitutionally protected liberties violated through extra-judicial, secret, and unconstitutional means greater than any man can bear. Plaintiff  earnestly pleads this Honorable Court for Equal Rights in America pursuant to all constitutionally protected and federally protected rights.

13. Plaintiff submits this dispute on his inclusion in the Terrorist Screening Database in accordance with 15 US Code § 1681i - Procedure in disputed accuracy and to date no dispute results have been received for the prior disputes disputed in accordance with 15 US Code § 1681i (a)(1)(A). Plaintiff sends this follow up dispute to this Honorable Court.

## V. DEFINITIONS

14. Definitions and rules of construction set forth in this Complaint are applicable for the purposes of this Complaint. Definitions rules of construction  as per[15 U.S.C. § 1681a] & 12 CFR § 1022.41. **(a)** The term "person" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity. **(b)** The term "consumer" means an individual. **(c)** The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit

worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit standing, credit capacity, character, general reputation, personal characteristics. **(d)** The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. **(e)** The term "file", when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored. **(f)** The term **"furnisher"** means an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report "consumer reporting agency" **(g)** The term direct dispute means a dispute submitted directly to a furnisher (including a furnisher that is a government entity or person) by a consumer concerning the accuracy of any information contained in a consumer report and pertaining to an account or other relationship that the furnisher has or had with the consumer. **(h)** The term "reseller" means a consumer reporting agency

7

that— assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and does not maintain a database of the assembled or merged information from which new consumer reports are produced. - **(i)** Statement of record states the "Terrorist Screening Database", a consumer report and file, whether from a consumer reporting agency, reseller, or furnisher, contains texts "suspected terrorists" which furnishers, persons, consumer reporting agencies, and government resell and or share information with persons, and government. -18 U.S. Code § 2331 Definitions- **(j)** The term "domestic terrorism" means activities that **(k)** involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; **(l)** appear to be intended to intimidate or coerce a civilian population; **(m)** to influence the policy of a government by intimidation or coercion; or **(n)** to affect the conduct of a government by mass destruction, assassination, or kidnapping; **(o)** and the term "international terrorism" means activities that **(p)** involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; **(q)** appear to be intended to intimidate or coerce a civilian population; **(r)** to influence the policy of a government by intimidation or coercion; or **(s)** to affect the conduct of a

8

government by mass destruction, assassination, or kidnapping.

## VI. PARTIES

15.     **PLAINTIFF** Mohammad Mokhtar Ahmed (hereinafter sometimes referred to as "Plaintiff", "Your Plaintiff", "Mohammad Mokhtar Ahmed", "Mohammad Ahmed", "Mohammad", "This Marine"," I", "me", "my", or "Veteran".) was born in Richmond County, Staten Island, New York; in Saint Vincent's Hospital. Plaintiff graduated from Tottenville High School after transferring from Moore Catholic High School, and enlisted in active service in the United States Marine Corps in 1998 and was Honorably Discharged from the United States Marine Corps in 2002.

16.     Plaintiff  is a Veteran of the United States Armed Forces, and Department of Defense personnel Uniformed Services Member, and a Service Connected Disabled Veteran as defined in 5 USC § 2108(2) and has a 100% service-connected disability rating given by the United States Department of Veterans Affairs 38 CFR § 3.340, based on unconstitutional events that happened in the United States Marine Corps 38 CFR § 3.1(y) as evidenced in an Article 32 on or About March 2001 and it's subsequent Military Officer Investigative Report from April 2001 - and Defendant Special Agent Jesus Torres as Evidenced in Plaintiff's Department of Veterans Affairs "**VA C-file**"

17.     Plaintiff is service-connected by the Department of Veterans Affairs with chronic diseases as defined in 38 U.S. Code §1102.

18.   **DEFENDANT** John Miller (hereinafter sometimes referred to as "Defendant Miller") is the Deputy Commissioner of the NYPD Intelligence Bureau, and the director of Unidentified Intelligence Bureau Officers. The mission of the NYPD Intelligence Bureau is to detect and disrupt criminal and terrorist activity through the use of intelligence-led policing.

19.   **DEFENDANT** NYPD INTELLIGENCE BUREAU OFFICER JOHN DOE FIRST ( hereinafter sometimes referred to as "NYPD Men in Blue Jeans"; Two Officers interacted with the Defendant. Refused any identification other than Intelligence Bureau Polo Shirts.

20.   **DEFENDANT** Charles Gable IV (hereinafter sometimes referred to as "Defendant Gable","Charles Gable") is the current Director of the Terrorist Screening Center (hereinafter sometimes referred to as "TSC", consumer report, credit file, watchlist).  Defendant Gable develops and maintains the federal government's consolidated Terrorism Screening Database a consumer report, and accepted nomination of  Your Plaintiff made to the federal watch list. Defendant Gable is the head of the consumer reporting agency, and transmits "suspected terrorist", although federal law limits to other furnishers of information. Defendant Gable also oversees the dissemination of the stigmatizing label attached to Plaintiff of "known or suspected terrorists" to state and local authorities, foreign governments, corporations, private contractors, gun sellers, the captains of sea-faring vessels, among other official and private entities and individuals. Defendant

10

Gable uses consolidated information in an unclassified terrorist screening

database and makes the database accessible to queries for federal, state, and

local agencies for a variety of screening purposes. Defendant Gable is being

sued in his official capacity only.

21.    **DEFENDANT** George Keller is being sued in his official capacity.

Defendant George Keller Special Agent for the Agency of the Federal Bureau

of Investigation,a person, an official of government, acting on behalf of,

government, an official with access to the Terrorist Screening Database (a

Consumer Report), a person able to redress grievances, acting on a

cooperative nonprofit basis for government;  Defendant George Keller

regularly engages in whole or in part in the practice of assembling or

evaluating consumer credit information or other information on consumers

for the purpose of furnishing consumer reports to third parties. Defendant

George Keller has permissible purpose for consumer reports and has a

legitimate business need for the information. Defendant George Keller at all

times material to this Complaint, acting alone or in concert with others, has

formulated, directed, controlled, had the authority to control, or participated

in the acts and practices set forth in this Complaint.

22.    **DEFENDANT** Donald Davis (hereinafter sometimes referred to as

"Defendant Davis", "Donald Davis", "Major Davis") regularly engages in

whole or in part in the practice of assembling or evaluating consumer credit

information or other information on consumers for the purpose of furnishing

**11**

consumer reports to third parties An alleged nominating party, who deprived Your Plaintiff of Liberty of the Due Process clause, of substantial erroneous deprivation, of recognizing basic human rights and equality. On information and belief an official with access to the Terrorist Screening Database (a Consumer Report), an abuse of power nominating party or reseller of information . On information and belief Defendant Davis disseminated inaccurate information to other persons and individuals with access to the consumer report, and without noting Plaintiff dispute or providing procedures for disputed accuracy. On Information and belief Defendant Davis violated Sec 102 of the Patriot Act, Sense of Congress Condemning Discrimination against Arab and Muslim Americans as evidenced in Your Plaintiff's military file. On Information and belief, conspired with other branches of government for Your Plaintiff to have unconstitutional interactions with federal employees working in their official capacity. Defendant Davis at all times material to this Complaint, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. On information and belief Defendant Davis was the nominating and or investigative party in the Terrorist Screening Database.

23.   **DEFENDANT** 7223 Gamma LLC is a corporation that owns buildings in Brooklyn and the owner/landlord for 505 73rd Street, Brooklyn, NY 11209. During  the time from 2010-2020 Plaintiff was in a Lease Agreement

**12**

with 7223 Gamma LLC.

24.     **DEFENDANT** Attorney Andrew Chertoff is an agent working in capacity of and for 7223 Gamma LLC while practicing law as  Attorney Andrew Marc Chertoff, Registration Number 1081496, at address 1421 Glenwood Rd, Brooklyn, NY 11230.

## VII. TERRORIST SCREENING DATABASE

25.     September 2003, U.S. President George Bush's Homeland Security Presidential Directive/ HSPD–6 implemented the "**'Terrorist' Screening Database**" (hereinafter "TSDB", "Watchlist", "Consumer Report", "Investigative Report", "Database", "Consumer file") the same day it requested the Attorney General to "establish an organization to consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of Terrorist Information in screening processes." The Directive ordered it to be implemented in a manner consistent with the provisions of the Constitution and applicable laws, including those protecting the rights of all Americans. Implemented through directive the same day fraudulently to allow no oversight and *de facto* state.

26.     The Federal Bureau of Investigations was designated to be the main consumer reporting agency for other repositories and resellers of this consumer report.

27.     The Bush Administration sold The Executive Order to the world on

**13**

*weapons of* "mass destruction"[2] because that was the keyword to allow him to get executive powers ,without oversight; "**mass destruction**" is in the definition. Those are the keywords that were conveyed for him to *remember, recite, repeat* to justify *unlawfulness*. Many speeches and interviews were given and held on weapons of *mass destruction*.

28.     **PEEK-A-BOO**, On or about March 2003 only six (6) months after --agents of the Bush Administration sold the world on President Bush's Homeland Security Presidential Directive/ HSPD–6 and executive orders, policies, and war commands, by using the words "mass destruction" -Mr. President Bush "sparked a political row" according to the British Broadcasting Corporation (BBC) by playing Peek-a-Boo to journalists at a black-tie event and stated: "Those weapons of *'mass destruction'* have got to be here somewhere." "The President could be seen bending over to peer at the floor of the oval office." *What an embarrassment* for a Commander-in-Chief. So were the illegal and unlawful Executive Orders made during this time. Homeland Security Presidential Directive/ HSPD–6 was carried out unlawfully because it was not in accordance with many statutes and §15 U.S.C. 1681. No due process was set up and that's why it was done simultaneously, while looking for "mass destruction" - for the *unlawful implementation* of Homeland Security Presidential Directive/

[2]Plaintiff heard "**weapons of mass destruction**" so many times he can recollect then President, George Bush's voice with ease and can remember when he bobbed his head when he would say the keywords = "**weapons of mass destruction**".

HSPD–6.                                    "No, no weapons over there."

---

*29.*   "*Maybe under here?*" "Those weapons of mass destruction have got to be here somewhere."

The Terrorist Screening Database is — and was — *contra legem ab initio.*

*__consensus ad idem__ 'The "Terrorist" Screening Database'* *is __contra legem__\*.*

## VIII. TERRORIST SCREENING DATABASE PER 15 U.S.C. § 1681c(6)

30.   The Terrorist Screening Database contains medical information, mainly medical information from the Department of Veterans Affairs. It's unlawful. In Essence of this Honorable Court, Plaintiff declares "The 'Terrorist' Screening Database", unlawful and violates every Section, Sub-Section, and Part in 15 U.S.C. § 1681.          **A Malifide** *contra legem ab initio, ad infinitum - de facto* **disguised** *de jure* **That will only be rectified by Mandamus Malum Prohibitum and Writ.**

## IX. PREFATORY STATEMENT

31.   Your Plaintiff *pro se,* researched all parties involved, and understands the allegations set forth are serious, especially when you name and allegate, and are speaking of occurrences of national security. Much corroborating information and "SENSITIVE" information is not submitted. Plaintiff never imagined he would have to write a Pro Se Lawsuit in the United States

**15**

District Courts and explain "I am not a terrorist", and plead for due process

and civil liberties because simply, I am a Muslim with Egyptian-Born

Parents. It's actually quite defamatory, *in itself* and *satisfies stigma-plus* to

have to prove the case; ***Luckily***, Muslims are not viewed favorably by

America so there's still a chance of redemption from being born Muslim in

America. Plaintiff always was under assumption he had the rights of every

citizen in America.

32.     Mohammad Ahmed served Honorably on various Marine Corps bases

to include Parris Island, Camp Geiger, Camp Lejeune, The Marine Corps Air

Ground Combat Center, 29 Palms, Camp Schwab, Quantico Marine Corps

Base. Your Veteran ran cross country at Moore Catholic High School &

Tottenville High School and was generally one of the most conditioned

Marines in running on any military base he was on. Your Plaintiff also

served security details for the 1998 Celebrity Skins Games in Palm Springs,

California and the 2001 Inauguration for then President, George Bush.

Since Boot Camp, Plaintiff was consistently met with obstacles not afforded

to other Marines. Plaintiff was classified as the "QuarterDeck King" by all

recruits to include Drill Instructors in bootcamp, and Plaintiff arrived on

Camp Schwab, Okinawa on or about January 1999. Plaintiff was humping

the first day at the 4th Marine Regiment on Marine Corps Base Camp

Schwab Okinawa, Japan for multiple miles with full Mopp Gear on, while

carrying his Gear, *and the company radio* - while others were allowed to get

acclimated for the weather. This Marine was sent to the gas chamber in Okinawa, Japan twice a day for a week, while others can qualify one time per year. *Truthfully*, Defendant found the training too easy but unfair.

33.    Despite this treatment Plaintiff was a stellar Marine and continued to advance quickly through rank in Japan to E-3. Plaintiff was positioned for a special billet shortly upon arrival to Okinawa, and was working under the direction of Gunnery Sergeant Alphonso Butler and Major John Quinn as the S-6 Clerk of 4th Marine Regiment and was in charge of all communications of Camp Schwab to attaching units, along with being the exclusive clerk for Major Quinn. Plaintiff was able to see the Respected, General Krulak Commandant of the Marine Corps. Plaintiff was trained by Decorated Vietnam and Gulf War U.S. Marine Officers and Enlisted, from the 4th Marine Regiment building. Your Plaintiff was well Loved throughout the 4th Marine Regiment Building Headquarters. Alphonso Butler The S-6 Chief nicknamed and called Your Plaintiff **"Ace"**.

34.    This Marine engaged in many mass brawl scenarios to include fighting on small platforms over the water with the Communications Platoon, swimming alone multiple times to Reconn Point, as known to others in the Platoon; few Americans enjoyed being on the small uninhabited island of reconn point. This Marine consistently trained unofficially with Reconnaissance Marines on Marine Corps base Camp Schwab Okinawa since his direct boss, Alphonse Butler allowed him not to train with the

**17**

other Marines in the platoon most days. Plaintiff became a two time rifle expert in Japan, Pistol Sharpshooter.

35.     Other Marines, namely the Communications Chief, Luke Converse in the Platoon would make Your Plaintiff run with him so he can improve his own conditioning. Plaintiff would run fourteen mile days, to include seven with Luke Converse daily. We ran on base and on the streets of Japan. During this time Luke T. Converse went in depth of his experiences as Saddam Hussein's hostage as a "Human Shield". Your Defendant listened and appreciated the advice and talks he received from Luke T. Converse, Sergeant Major of Marines, a Gunnery Sergeant at the time. The beliefs and values Luke Converse spoke of during those runs are still instilled in Your Plaintiff today.

36.     When Your Plaintiff  told Alphonso Butler about his desire to be stationed at Quantico, close to New York, Alphonso Butler communicated about the systematic racism in the Marine Corps known there, but Your Plaintiff  did not understand it at the time. Your Plaintiff describes Japan and Quantico as day and night.

Plaintiff arrived at **QUANTICO, VIRGINIA** on or about January 2000

37.     Your Plaintiff was a field radio operator and was permanent support attached to Officer Candidate School (Hereinafter sometimes "OCS") in January 2000. Your Plaintiff was a Superstar, capital S. Plaintiff firemen carried every downed candidate like Forrest Gump to the Medical

Evacuation HUMMV and drove downed candidates from remote locations to Medical, **in extreme fashion**, regularly. Plaintiff was the fastest Marine in running in this Platoon too *by far*. Plaintiff's direct supervisor was Sergeant LoneWolf and Sergeant Lee, and the Platoon Commander was **David Banning** at the Officer Candidate School, a captain at the time. Plaintiff's Military records will show Mohammad Ahmed's oppressive unlawful interactions with Defendant David Banning. The United States Marine Corps donkeyed Your Plaintiff above and beyond - Because of Plaintiff's abilities - And Your Plaintiff is Muslim, so laws are always violated. And Accepted. Captain Banning violated the UCMJ and many military orders to include coercion. Military records show Captain Banning made Nineteen Year old Mohammad Ahmed get fingerprinted without cause, and without due proces, without any criminal investigation, simply because he was Egyptian and Muslim, which was the first time Your Plaintiff was fingerprinted.[3] Military Records will show Captain Banning non-recommended Your Plaintiff at age 19 simply because he asked for a lawyer when Captain Banning was trying to frame him with bogus charges. Captain Banning would try to frame, and then write forced confessions where Your plaintiff was intimidated to sign forced fake statements and when Plaintiff wouldn't sign bogus criminal allegations and asked for due

---

[3] Plaintiff is a self-proclimed data expert and states: this was when biographic information associated with Plaintiff was first registered within the United States; By unlawful means since he is Muslim, and/or "fucking Egyptian".

**19**

process, he was denied and denied promotion and treated unequally by most definitions. When that didn't work, Defendant Banning tried coercion, when that didn't work he started to illegally non-recommend Plaintiff for promotion in the Marine Corps with fake allegations and illegal orders as evidenced in the military file. Abuse was a daily occurrence at Officer Candidate School under David Banning--- the thing was Plaintiff could withstand physical abuse and was fast-to avoid it during games of contact. David Banning would generally step on his tippy toes when he encountered the **Big Demo Platoon Marines**[4]. During contact games of sport under the direction of David Banning,[5] most Demo Platoon Marines would charge at your Plaintiff with what Plaintiff concludes as intentions of bodily harm, which lead to bodily harm that was unreported by self and involuntarily seen during standard medical checkups. During this time, many Marines stationed at OCS during these games would suffer broken and bruised bones and other bodily injury and David Banning was ordered to stop with the games by OCS Medical. Plaintiff was generally faster than all of Demo Platoon, to include David Banning *by far*, so they rarely caught Plaintiff as witnessed through different events by Defendant Special Agent Jesus

---

[4] The Marines of Demo Platoon had the same big frame as an Alleged Unidentified American Federal Air Marshal unlawfully encountering Plaintiff returning home at the Gates of Madrid, Spain, because of the Terrorist Screening Database; Alleged Air Marshall had a large baseball player muscular build - like most Air Marshals *in the field*.

[5] Games of contact were a very aggressive style of getting a football in a tire on the ground on opposite sides of an open field. David Banning's command was so slow in running, and no one dared take him down.

20

Torres. The few times that Plaintiff was caught bodily injury would occur.

38. David Banning conspired with others to kill your Plaintiff, and it is Your Plaintiff's conclusion that information missing from his medical file can prove this. David Banning did all he can to physically injure and kill your Plaintiff. In 2018, The Department of Veterans Affairs Doctors reported that Plaintiff has tinnitus, but the Doctor couldn't rate the condition since the original hearing record is not found. The Veterans Affairs Attending Doctor asserted this part of the file is extremely odd to be missing.

39. Despite this treatment, it was the lack of procedure of rule of law **for promotion**, because your Plaintiff is a "fucking Egyptian" as stated in the military file, that made Plaintiff seek a transfer. On information and belief Captain Banning conspired with Defendants to destroy evidence in Plaintiff's medical file. On information and belief, when Plaintiff's father called the Colonel of the Officer Candidate School, to report David Banning, David Banning transferred Plaintiff to his close friend Defendant Donald Davis in Training and Education Command so he could continue his proxy of illegal activities; a modern day code red.

40. Colonel David Banning made many prejudiced comments and unlawful actions to Your Plaintiff in violation of the UCMJ and other constitutionally protected liberties while at the Officer Candidate School as evidenced in the military file. David Banning made a fake investigation and fake accusations on Quantico Base while Plaintiff was ordered *by him* to take a Marine

21

Co-worker to a Funeral in New York **when Plaintiff returned Plaintiff ordered to get fingerprinted at the Army Criminal Investigation Service**; then Captain David Banning, now a Colonel, non recommended Plaintiff for promotion when Plaintiff requested a lawyer because of David Bannings fraudulent and coerce acts. **This was the first time the government was able to obtain Plaintiff's biometrics.**

## X. DEFENDANT DONALD K. DAVIS

41.    Plaintiff was working as Communications Support Marine for Officer's Candidate School under the direction of then Captain David Banning[6] under Training and Education Command Quantico, Virginia, Plaintiff was then transferred to Defendant Donald K. Davis' command, Training and Education Company ("TECO"). Donald Davis is not as quick-witted as David Banning, as evidenced at our Article 32 hearing when he was testifying against Plaintiff, while being cross-examined by the government.

42.    Captain Douglas Cody, government defense counsel was able to expose under oath under a prolonged full day Article 32 Hearing,  under court record the length the government went to frame Plaintiff, a Muslim, one that was referred to as "Muslims are the dark", "Christians are the light" and referred to Your Plaintiff as the "devil" and Christians as the "angels" - this coming from a man I never met before other than the night he took me

---

[6]There are written instances of racist discrimination and violations of law by Colonel David Banning in the military record and a Complaint is filed and docketed not "pending" in the District of Columbia includes David Banning.

to the Brig in an unmarked white van and told me "You're going to jail and You're never getting out". In the Article 32 hearing by Donald Davis; an attempt to keep Plaintiff in the Brig for many many years, all because of one short man's stature complex, vendetta against Muslims, and Egyptians as evidenced what's left in the military file. Your Plaintiff was surrounded at night one night shortly after his infant son was born. It was Donald Davis, a Major in the Marine Corps in Conjunction with CID, and many military police officers, came to Plaintiff's base housing home on or about February 7 2001, in the late evening to take Plaintiff to pretrial confinement in the Quantico Brig against all laws procedures and norms. Plaintiff was held in pretrial solitary confinement in the Quantico Brig on or about February 2001 to April 2001, with the maximum detainment policy by order of Donald K. Davis. Donald Davis broke every protocol to have Plaintiff detained as evidenced in the Article 32 hearing transcript, and findings report.

43.    This detainment during the time Daniel King Was on A-Block Solitary Confinement without charge for over 500 days. As stated to the Senate Select Committee on Intelligence by his attorney Jontathan Turley, "Ironically, the unconstitutional and abusive tactics used by the NCIS in this case not only undermined any legal case but defeated any legitimate search for the truth. After triggering an espionage investigation, NCIS agents found that they had no evidence and no spy. Rather than admit to a colossal blunder, these agents continued to interrogate a sailor for 19 and 20 hour

sessions for 29 days. When no evidence was available to support their catastrophic misjudgment, They sought to create evidence. The NCIS manufactured a theory of espionage without foundation and then took steps to compel statements to support that theory. The tapes and evidence secured by the defense in this case reveal agents seeking a trophy not the truth. This trophy-seeking was more than evident when Special Agent Stuart Wilson actually had fellow agents videotape his delivery of Petty Officer King to the brig in Quantico, Virginia." Your Plaintiff is very grateful for the Prayers and Love Daniel King and Wayne Mckenzie gave him; and Mohammad Ahmed wants to Thank You Waynze Mckenzie for saving his life. Mohammad Ahmed loves the care and encouragement he received from Wayne Mckenzie on A-Block in Quantico Brig. Your Plaintiff affirms Appellant Wayne Mckenzie's Allegations as a first-hand witness to allegations of pretrial punishment in Quantico Brig made in **UNITED STATES v. Wayne D. MCKENZIEStaff Sergeant (E-6), U. S. Marine Corps** in NMCCA 200101937 And Plaintiff declares under oath Appellants torturous treatment while in "special quarters" A-Block at the Quantico Brig.

44.     Your Plaintiff has received this same illegal treatment as Daniel King and Wayne Mckenzie at Quantico Brig A Block.

45. On presumption of stated public undisputed facts Plaintiff alleges Donald Davis was also the commanding officer of Affraz Mohammed, and Plaintiff alleges Mr. Mohammed was transferred to Alexandria because of

the botched Article 32 hearing Defendant Davis had with Plaintiff. The

solitary pretrial confinement  has been a change in lifestyle for your Plaintiff

- the treatment *thereafter* by release to their command was inhumane by all

accounts. On information and belief Donald Davis, while acting as a

Jefferson County official, in the capacity of agent of Jefferson County, and

while having access to the Terrorist Screening Database in 2018, requested

an investigation and for other Defendants named in this Complaint to

illegally stop and violate Your Plaintiff in Brooklyn New York, and for

violations and actions not in accordance with Sec 102 Patriot Act.

## X. INTERACTIONS WITH NYPD COUNTERINTELLIGENCE

46.     On or about August 2018, Defendants from the New York Police

Department Intelligence Unit, arrived at Plaintiff's location in Brooklyn,

New York.

47.     As Plaintiff approached his location in the early sunrise hours, he was

met with two blue shirts: "NYPD Intelligence", agents who introduced

themselves as "ooorah Mohamed."

48.     They identified themselves as Department of the Navy veterans, as

they wore blue NYPD Intelligence Polo Shirts.  They forced Plaintiff into

their cars and took Plaintiff a few blocks away to 3rd Avenue Bay Ridge

Brooklyn to interrogate him. Plaintiff doesn't recall them identifying their

names.

49.     Plaintiff asked for a lawyer and was told no.

50.     NYPD intelligence officers continued to interrogate Plaintiff for over an hour, asking for information about family, parents, connections, credit repair process and in depth military service, and other identifying questions, to include Defendant Donald Davis.

51.     Defendants NYPDIBO unlawfully searched Plaintiff's phone information. Defendants NYPDIBO knew medical information about Plaintiff upon arrival. Defendants NYPDIBO refused Plaintiff's requests to call Special Agent Jesus Torres.

52.     This illegal search and seizure led your plaintiff to experience symptoms of his documented disability - since illegal actions and searches have been happening ever since Plaintiff arrived at Quantico being Muslim.

18.     At one point during this unlawful occurrence, Plaintiff took his shirt off in frustration and the officers immediately took pictures of Plaintiff's unclothed upper-body without permission; very fast pictures in a paparazzi-like fashion.

53.     Your Plaintiff was in fear of being shot in the car, since he saw all the fear in their eyes.  These tactics were intimidating, unfair, cruel and unusual. It's clear from their actions, they were on a fact finding mission. During the conversation one intelligence officer was stating things Plaintiff did not say, and Your Plaintiff told the front seated officer he would not speak again to him unless the other  officer apologized.  The  Officer said "I'm Sorry", then was made to repeat: "I'm Sorry Mohamed" before Your

26

Plaintiff would speak again. Plaintiff felt this was the only way to keep any type of dignity, and stop their barrage of fales stated questions.

54.    Defendant's were threatening and intimidating Your Plaintiff to enter his location. The officers were repeatedly stating they needed access to Your Plaintiff's location.  Your Plaintiff declined their advances which made the officer's change topics consistently and become more agitated. At one point the officer's were commenting about the women that were walking on the block and were ogling over some ones they perceived as pretty ones, and making fun of another one that had sweat coming from her backside. The officers baited Your Plaintiff to look at the women and check their backsides in a sexual manner.  The officers were adamant about performing an illegal search on Plaintiff's premises, so Your Plaintiff left the car.

55.    Your Plaintiff continued to experience documented disability symptoms which he conveyed to the officers, but the officers did not care causing your Plaintiff damages.

56.    At no time was Plaintiff given notice of the factual basis for his placement on the federal terror watch list, and at no time was he offered a meaningful opportunity to contest his designation.

57.    Moreover, at no time was Plaintiff  given notice of the deprivation of his liberty interests or violation of his constitutional rights, or have any government agents processed any disputes in accordance with accurate procedure.

## XII. SPECIAL AGENT GEORGE KELLER

58.   Plaintiff was intercepted shortly thereafter by Defendant Special

Agent George Keller of the Federal Bureau of Investigation at his office.

59.   Special Agent George Keller approached Your Plaintiff and knocked on

Plaintiff's door. Your Plaintiff told him to go away and Defendant George

Keller took out his badge and stated: "But I only want to speak to you

Mohammad".  Your Plaintiff's dogs were standing guard and barking at

Special Agent George Keller. Having no recourse and to deescalate the

situation Plaintiff told Special Agent George Keller he would be out in a

minute. Plaintiff took a real big bong hit of cannabis before exiting his

location. Plaintiff's free movement being stopped during this time

immediately triggered Your Plaintiff to experience symptoms of his

documented chronic disability.

60.   George Keller is a seasoned Federal Bureau of Investigation Officer,

and his partner Special Agent John Doe , an extremely respectful,

well-mannered, with military-like movements, who reflects the standards

Defendant George Keller expects, approached. Defendant Keller is stoic,

above intellectual capacity, and is no nonsense; what Plaintiff concluded.

Defendant Keller is a true Field agent.

61.   Your Plaintiff immediately told Special Agent George Keller asking for

a lawyer, but Special Agent George Keller acted as if he didnt hear it.

Special Agent John Doe was providing cover guard for Special Agent George

**28**

Keller at least 6-8 feet away. Your Plaintiff told Special Agent George Keller of Attorney Douglas Cody of Hammonton, New Jersey. George Keller ordered Your Plaintiff to go to his Land Rover; and Special Agent George Keller placed Your Plaintiff in the back passenger seat of his Land Rover. Special Agent George Keller asked Your Plaintiff if he had any weapons to which your Plaintiff replied "Just my hands". Special Agent George Keller proceeded to pat Plaintiff's body and put hands in Plaintiffs pants pockets to include lifting up his shirt. Special Agent George Keller placed the seat belt around, and asked "*do i smell---*" Your Plaintiff was assuming he was speaking of the recent remnants of cannabis, Your Plaintiff cut off his statement and stated "yes".

62.    Special Agent George Keller went around the front of the vehicle to get in the back passenger seat with Your Plaintiff. Special Agent John Doe  at this time moved his cover position to the front passenger seat in front of Plaintiff.  George Keller started asking the same questions the NYPD intelligence unit interrogated him with.  Your Plaintiff, agitated, telling Special Agent George Keller he "already went through this" with NYPD Intelligence.  Special Agent George Keller stated there was always a power struggle between the FBI and their unit. Special Agent George Keller is a seasoned no-nonsense federal officer - his intellect is on a different level than the Intelligence Bureau Officers, or any officer or agent I encountered by far, to include the Special Agent "very good friend". Special Agent George Keller

**29**

stated he was from Fredericksburg, Virginia and we spoke of Virginia for some time. George Keller knew the answers to most of the questions he was asking beforehand. Your Plaintiff sat and answered very close to Special Agent George Keller and kept his eyes locked with his eyes less than 3 feet apart. Your Plaintiff answered all Special Agent George Keller's questions without hesitation immediately upon asking, except when Special Agent George Keller asked "what do you want", Your Plaintiff found this question to be odd and confirmed his belief that this was a fact finding mission for a database, and to see if Your Plaintiff had any firearms. Your Plaintiff replied to be treated equally or something concerning his unlawful detainment.

63.     Special Agent George Keller repeatedly told Your Plaintiff he wants and needs access to his location without warrant. Your Plaintiff declined but was interrogated more until he couldn't refuse. Defendant ordered Your Plaintiff to tie up his dogs, Your Plaintiff refused to tie his dogs in their own den. Your Plaintiff told Special Agent George Keller to "Trust me", which he then proceeded to perform his illegal search, and entered the property. Special Agent George Keller entered Plaintiff's property and performed an illegal search of premises. Special Agent George Keller asked to take pictures of the walls which Plaintiff declined.  Defendant Keller started to unlawfully go through Plaintiff's personal belongings, but *"no, no weapons here"*. Defendant George Keller did not bend over and look for weapons of mass destruction like President Bush did at the time. He did not say "maybe

30

under here", or "those weapons of mass destruction have got to be here somewhere", contrary he carried himself with stoicism and demanded respect.  Special Agent George Keller said "I will tell them You are a working man". Your Plaintiff stated to  Special Agent George Keller of the events that happened in the military and gave him the phone number to Special Agent Jesus Torres and told him he "could corroborate any statement made today". Special Agent George Keller said if this is true he would contact the National Criminal Investigative Service and tell them, but Plaintiff did not receive any notification of completion from Defendant Keller - or the consumer reporting agency that he operates, furnishes, resells, discloses. Plaintiff also found his statement odd since Special Agent Jesus Torres works NCIS. Special Agent Jesus Torres has greater access than Special Agent George Keller, and has performed more extreme missions working in the capacity for Government, as witnessed by Plaintiff. As he was leaving, Special Agent George Keller stated something to the effect of "we won't bother you again" or "I'll tell them to leave you alone" Plaintiff is unsure of exact comment said, but perceived one of these statements was stated. Plaintiff states Special Agent John Doe , stayed quiet the whole time and provided cover for Special Agent George Keller. Special Agent John Doe body movement was of compassion and sorrow of the information Your Plaintiff was stating. Special Agent John Doe, was respectful to your Plaintiff while carrying out his duties.

64.     After being interrogated, Your Plaintiff immediately texted Special Agent Jesus Torres and told him of the interactions. Special Agent Jesus Torres text "are you on a watchlist" Your Plaintiff then replied "I don't know am I?", Special Agent Jesus Torres did not reply. Special Agent Jesus Torres text Your Plaintiff about 10-20 minutes thereafter to call him.  Upon calling Special Agent Jesus Torres, Special Agent Jesus Doe Torres "yeah you're good, Don't be a dick"  This led Your Plaintiff to believe that Special Agent Jesus Torres made contact with Special Agent Keller.  Special Agent Jesus Torres said "these things happen, you spoke to them, everything is fine, You're good" Your Plaintiff is inferior to the next man that he must get validation from others simply for being a Muslim.  Your Plaintiff rejects this treatment especially since all these people who give validation come to Your Plaintiff when they need.  Your Plaintiff found it odd that the advice Special Agent Jesus Torres was giving him now, was different from the advice given by Special Agent Jesus Torres when he was in Georgia. At this point, Your Plaintiff realized Special Agent Jesus Torres and Your Plaintiff can no longer co-exist as true friends, which was later proved to be true through his various actions.

65.     Defendant George Keller did not follow up on Plaintiff's dispute as required, and when calls to the Manhattan FBI office were made afterwards, a veiled threat of investigation was made towards Your Plaintiff if inquired; Your Plaintiff is constantly threatened with investigation or surveillance

**32**

while legally searching for redress.

66.   Based on consistent injustices and a lifetime of coercion, On or About December 2018, Your Plaintiff Retained Lazzaro Law Firm, P.C. namely, James Kirshner and Lance Lazzaro who stated "it is odd to him to retain an attorney when not charged." Your Plaintiff has retained the Lazzaro Law Firm for criminal legal matters that are alleged in the City of New York. Your Plaintiff did not act in any manner not consistent with law, to include any traffic incidents.

67.   On or about November 2018 Your Plaintiff contacted and communicated with Dr. Ed Tick Counselor, PhD, LMHC a nationally recognized expert in healing trauma with specializations in military, violent and developmental trauma. Dr. Tick created a unique and comprehensive protocol for bringing veterans home that is now used nationally. He led overseas educational and healing journeys as a guide to Greece and Viet Nam. He has over forty years in practice and is the author of seven books. He has trained staff, taught and worked at major Department of Defense and Veteran Administration facilities and at colleges, universities, hospitals, health care and community centers across the country and overseas. Defense Department and VA facilities use his pioneering work and he has served as the US military's subject matter expert trainer on PTSD and Moral Injury for the past decade. Your Plaintiff was receiving advice from Dr. Tick at this time. During this time Your Plaintiff  and Dr. Tick spoke of  symptoms from

a different diagnosis than his doctors operating under the direction of the Department of Veterans Affairs, and the Department of Defense Health Care System.

## 7223 GAMMA LLC

68.    Defendant 7223 Gamma LLC's  is a corporation that owns buildings in Brooklyn, New York, and Plaintiff was renting office space from them. Defendant 7223 Gamma LLC's officers confiscated Defendant's property, and valuables; Defendant 7223 Gamma LLC restricted and locked access away from Your Plaintiff during a federal and state moratorium.

18 U.S. Code § 1597.Unlawful conduct with respect to immigration documents a)**Destruction, Concealment, Removal, Confiscation, or Possession of Immigration Documents.**—It shall be unlawful for any person to knowingly destroy, conceal, remove, confiscate, or possess, an actual or purported passport or other immigration document of another individual . On or about August 2020 7223 Gamma LLC locked Your Plaintiff out of his leased office where he has been encamping, during the Covid 19 Pandemic. Actions by officers under the direction of 7223 Gamma LLC, have confiscated Plaintiff's belongings to include highly valuable collectibles, cash and rare bills and rare coins, The Hue Man Chess Game Painting, along with Plaintiff's Egyptian Birth Certificate and United States Passport.

Also confiscated was Plaintiff's personalized letter with Gold Seal from Mr.

President Donald J. Trump thanking him for his service. Plaintiff has other *emails* from The Office of Official Correspondence but put greater value on the one that came from the Postal System with the shiny gold seal. Your Plaintiff has not had access to his belongings since August 2020 and does not know what was taken or added or it's whereabouts.

## CHARACTER AND REPUTE

69.    Plaintiff was raised on the South Shore of Staten Island, Both  of Plaintiff's Parents have served their communities with distinction and honor. Both of Plaintiff's parents have participated with their neighbors around them and had a strong work ethic for humanity for forty plus years. They worked in the New York Police Department, The New York Department of Health and Mental Hygiene, and The New York City Department of Housing Preservation and Development Administration Center for New York City, and retired after 38 plus years of service to New York City. Plaintiff was also raised by the values of his neighbor, Evelyn, a Public school teacher who babysitted him. Both parents have raised your Plaintiff to respect the rights and needs of others before mine, both parents were in full compliance of the law at all times with not even receiving a speeding ticket, to the best of your Plaintiff's knowledge. Upon Honorable Discharge from the United States Marine Corps, Your Plaintiff worked at Cowles Nissan Chrysler in Woodbridge, Virginia on or about June 2002.

70.    Your Plaintiff was a salesman who was then promoted to Sales

manager on or about June 2003.Your Plaintiff spent all of his days and nights and weekends working. Your Plaintiff decided he would do what the owner Frank Cowles hired him to do, to the best of his ability, and make customers pay as much he could, as that was his job. Although at times unorthodox, Your Plaintiff was free in his speech to customers learning different talking points to allow customers to be contracted.

71.     Your Plaintiff broke multiple store records for profit and units sold across all departments

72.     Plaintiff was caring for Special Agent Jesus Torres' young daughter in Special Agent Jesus Torres' home, while Special Agent Jesus Torres was a first responder acting and engaging in the active Naval Yard Shooting in 2013. Special Agent Jesus Torres and Your Plaintiff went to gun ranges to target practice. Your Plaintiff practiced gun safety, and is classified as rifle expert and pistol sharpshooter from the Marine Corps.

73.     Your Veteran ran the Marine Corps Marathon with Defendant Special Agent Jesus Torres; Your Plaintiff finished in the top 1%, and did not train the final month, while smoking cannabis all day everyday during this period as his way to treat his symptoms from solitary confinement and the unlawfulnesses thereafter. Special Agent Jesus Torres slowed Plaintiff down by insisting we start the marathon at the 9-10 Minute mile heat. Feeling *we were walking*, Plaintiff told Special Agent Jesus Torres he had to go, *but first* switched headphones so Special Agent Jesus Torres could be more

comfortable. Plaintiff had to run and evade the first 9 miles running like a football running back to get out of the massive slow moving crowd.

74. Your Plaintiff and Defendant Special Agent Jesus Torres ran the United States Marine Corps Marathon in memory of Marines **Staff Sergeant Faio Viki Apineru, AP, United States Marine Corps**; Your Plaintiff also ran in memory of his brother-in-arms **Sergeant Richard Lord, United States Marine Corps**. Your Plaintiff attended a Veteran run Search, Evasion, Resistance, and Escape program in Washington D.C. on or about the same time frame with Special Agent Jesus Torres, and other Veterans. At times when Your Plaintiff visited Defendant Special Agent Jesus Torres at his home while he went to work, Special Agent Jesus Torres would leave his daughter under the supervision of Your Plaintiff. While deployed on ship on an overseas missions, Your Plaintiff contacted Defendant Special Agent Jesus Torres with an associate, who was a Licensed Real Estate Agent in the Commonwealth of Virginia, and the Licensed Real Estate Worker went above and beyond any standard duty of care to ensure Defendant Special Agent Jesus Torres had a warm home for him and his family on return from deployment.

75. Your Plaintiff went to Rikers Island to visit Defendant Special Agent John son while incarcerated, while Defendant Special Agent Jesus Torres was on a deployment. Your Plaintiff had to endure *extra judicial* strip searches that reminded him of his wrongful incarceration causing greater

damages consistent with the treatment as stated in Grottano, et al. v. The City of New York, et al. In the United States District Court Southern District of New York Civil Action No. 15 Civ. 9242 (RMB). Your Plaintiff was a class member in this suit but has opted out.

76.    Based on these unconstitutional instances, and torture plaintiff became extrememly depressed and hopeless from 2010-2015 and eventually became  homeless as classified by The Department of Veterans Affairs. Veteran thought if he had nothing, he would be left alone. Plaintiff encamped at 505 73rd Street.

77.    Your Plaintiff spent his days from 2010-2017 improving credit reports in accordance with the Credit Repair Organizations Act, and training at Chelsea Piers In Manhattan, New York. Plaintiff secluded and focused on managing a team of overseas programmers to improve consumer credit files by automation, in accordance with federal dispute procedures from on or about 2015-2017.

78.    Based on this time, Your Plaintiff concludes he has acquired the knowledge and skills that could be classified as expert in the areas of applying administrative procedures in accordance with 15 U.S.C. § 1681i, also known as credit repair; interpreting body language, interpreting facial expressions; finding real time news and trends through the internet; and interpreting changes in data. Plaintiff joined Michael Citron in Tampa, Florida to administer classes and ethical rules of procedure instruction to

credit repair professionals and other credit repair experts of the country five years earlier in 2010; and Plaintiff has contributed and assisted Brett Ryckman the creator of disputesuite.com, create his credit repair program on or about 2007 before it was sold to Michael Citron, which was the most advanced at the time. Your Plaintiff did not ask for compensation.

79.    In 2016, Plaintiff directed his team of professionals at-the-time to extract data from Original futurist and best-selling author, Faith Popcorn's Brain Reserve - the futurist marketing consultancy she established in 1974, by request of their Chief Financial Officer, Michele Rodriguez so it can be migrated to a Salesforce database, after all their prior efforts had Failed. Your Plaintiff had his team conclude it within a week and didn't ask for compensation.  It was Your Plaintiff, a homeless veteran that ate the costs for this Madison Avenue, New York company to be able to function.

80.    Your Plaintiff has improved a substantial amount of credit files, to include Defendant Special Agent Jesus Torres, members from Brownsville, Brooklyn when they are 19, other prominent members of society, that include many federal law enforcement agents and other employees across most federal agencies, civilian advisors to the United States Postal Service, members of the National Basketball Association and their associates, and a member of the National Football League, and their associates and many lawyers, doctors and newly arrived residents. Your Plaintiff also counseled many New York Police Department officials on credit reports, mainly from

**39**

the 68th Precinct, in Brooklyn New York.

81.   Your Plaintiff has helped countless United States Federal Agents to include law enforcement to improve their credit reports so they can have access to better banking opportunities and government clearances or higher government clearances. Your Plaintiff operated a website creditdoctorcompany.com in conjunction with a team of web programmers, so consumers can enjoy "better credit for better living", which was the slogan used on the advertisements. Your Plaintiff practiced data collection and procedures in accordance with the Credit Repair Organizations Act. Your Plaintiff is regarded across America in the credit repair industry.

82.   Despite all this extra judicial, unconstitutional treatment, and illegal treatment; Your Plaintiff is a good force for his community.  Your Plaintiff believed in the pride for his country, the United States of America and Congressional Oath that he has taken as a United States Marine to defend against all enemies foreign and domestic.  Your Plaintiff has never encountered anyone knowingly of any foregin government, other than the interrogating officer, Tetouan Police Department to marry Plaintiff's wife, Maryem in coordination with the US Consulate in Casablanca, Morocco; and Officer Zakaria, Police Chief of Tetouan Morocco, and to be interrogated by The King of Morocco's secretary when Your Plaintiff married his wife Maryem. Your Plaintiff compiled and submitted paperwork to the Kingdom of Morocco, Province of Tetouan without help of foreign attorneys to be able

40

to legally marry his wife, Maryem Ahmed in 2020. Plaintiff also was stopped by plain clothes Spanish Government officers, and US Federal Air Marshals at Madrid Airport.

83.    Despite having an Egyptian birth certificate and unaware of the rights that accompany having this birth certificate, Your Plaintiff has never had any contact with the Egyptian government or their associates, knowingly. Your Plaintiff has contacted the Egyptian Egyptian Embassy in Washington D.C. on October 15, 2021 to see what his rights were as an Egyptian Birth Certificate holder, and to convey the awareness of this federal complaint. Your Plaintiff generally does not make conversation with anyone unknown or not needed aside from the people who live on the streets of New York.

84.    Your Plaintiff has kept in contact with his Senior enlisted personnel from the Marine Corps until last year. Your Plaintiff has worked with his drill instructors from Parris Island to improve their credit reports. Your Plaintiff has kept in contact with Sergeant Major Luke Converse on occasions throughout his military career, and many times after his end of Service, to include spending days on his property in the woods to take down trees and other hard labor actions. Luke Converse was a Prisoner of War per 50 U.S. Code § 4105.

85    Plaintiff has helped many federal officers improve their credit and did not charge a fee for his service or ask for any type of payment, service, or favor. Plaintiff incurred all costs to help his "friends", the same ones that he

is forced to be treated less than a second class citizen because of his race, and religion.

86.     Plaintiff has helped his community by volunteering on many occasions through different channels, to include shoveling a New York City block alone for the neighborhood, volunteering for the New York City Marathon, moving freshmans belongings into their dorms for College of Staten Island, with greater intensity and results by far than every other volunteer, assisting veteran students and other students and faculty in the College of Staten Island on various occasions, buying healthy snacks for energy when Your Plaintiff sees any Brooklyn New York City Police Officer on middle street guard duty.

87.     Your Plaintiff purchased, packaged, and mailed critical mission supplies to Defendant Special Agents Jesus Torres on missions in Afghanistan, vital supplies that were asked for to continue their missions. Defendant Special Agents John Doe called Your Plaintiff many times during secret missions to destress, and Your Plaintiff took the time to listen to him despite having to manage overseas programmers. Your Plaintiff put their needs before his. During this time Your Plaintiff was over-hyper vigilance in his own surroundings, understanding that if contact would be lost between Defendant Special Agent Jesus Torres and Your Plaintiff, and there was no news on television, Your Plaintiff would have to go to Afghanistan.  During this time Your Plaintiff trained more with his Service Dogs, Petroclus, Lucky

TearDrop, and Shadow Me. Your Plaintiff put his work aside and spent all day making perfectly packaged supplies for the mission for his government's objectives. Your plaintiff does not just send socks, Your Plaintiff made a very nice packaged carebox so *Your* Special Agent can return home to his family.

88.    Your Plaintiff has received letters through postal service and email from the Office of Official Correspondence of the White House, that included many customized messages. Your Plaintiff received an email from The President of The United States stating: "As President, I am heartened by the kindness of patriotic Americans like you".  Your Plaintiff received other messages and letters from the President to include thanking him for his service, thanking him for staying involved, and gratitude for words of encouragement. Your Plaintiff states that during his time of navigating the government, The White House Mr. President Trump Administration was very good to follow up and get action with this Veteran. Your Veteran is grateful for their assistance during that time.

89.    Plaintiff *pro se* was actively acting as a securities trader in Brooklyn, New York in 2020; acting with above substantial trading activity that seeks to profit from daily market movement in securities as defined by the *IRS Topic No. 429 Traders in Securities (Information for Form 1040 or 1040-SR Filers)*. Plaintiff was on summer break from his college courses. Plaintiff was and is a student at College of Staten Island and is a double major of Business Science Management Concentration and Informations Systems and

**43**

Informatics, with six (6) minors to include public administration, business data analytics, disabilities studies, legal studies, business finance, and business information management. *(Plaintiff maintained a 3.85 GPA before June 2020 and a 4.0 GPA the semester of Spring 2020 at the College of Staten Island with over 200 credits accredited from classes, tests, and conversions. Plaintiff takes 20 plus credits per semester.)* During this time Plaintiff saw a home listing online within the Commonwealth of Virginia and inquired during conversation with *Eddie Santos*, on using his Veterans Home Loan Entitlement to purchase property for his wife in accordance with VA Occupancy Requirements. Plaintiff expressed through writing to the Department of Veterans Affairs VA Home Loan Occupancy Statement and many times to Eduardo Santos that Plaintiff was purchasing  real property for his wife, and Plaintiff would use the basement to trade stocks since his location did not have a capacity to have a wired connection. Plaintiff needed a stable internet connection and not having a stable internet was causing Plaintiff stock losses during the Summer of 2020.

90.     After being removed from Charles Schwab unjustly and without merit because of the Terrorist Screening Database, in 2021- Plaintiff became extremely hopeless and depressed, but continued to read current events and breaking news trends. Your Plaintiff read a story of "Task Force Pineapple" when news first became public through media, Your Plaintiff registered taskforcepineapple.com and sold this domain through broker services about

**44**

two weeks thereafter.

91.    On August 26, 2021, heartbroken of the first reported "service members that were lost in Afghanistan, understanding the Marines were stationed there, but not yet reported, Your Plaintiff immediately sent a contact form message to The White House to lower the Flags Half-Mast. A non-automated message was received shortly thereafter from the Office of Official Correspondence stating they were "grateful for the outreach".

92.    Although suspicious of Plaintiff's new neighbor's intentions, Your Plaintiff still helped his neighbor to include bringing them flowers on multiple occasions, bringing him ribeye steaks, and pizzas as he was battling a terminal disease. During the last days of the neighbor's life, Your Plaintiffs and Your Plaintiff's wife prepared bone broth, fresh squeezed apple juice, and specifically Moroccan Tea which was requested by his Neighbor, despite the prying neighbor's wife encouragement to Plaintiff's wife that she is in America and could be with other men. Your Plaintiff held his neighbor's hand gently as his life was passing, comfortably, and with dignity, despite the neighbor, a gun seller, who has access to the Terrorist Screening Database through The Department of Justice ATF system and who has access to the TSDB List with constant prying for information. Benny Vento did not speak much, but his eyes were filled with sorrow. Your Plaintiff was told by Benny Vento that he was treated like a "ragdoll" in his home.   When the softly spoken dying words, statement was made - Benny Vento's wife

yelled aggressively asking what he said, but then repeated "who treats you like a ragdoll". Benny Vento's eyes were full of sorrow and dry tears, and he softly stated he had a long day, which Plaintiff took as his cue to leave. Benny Vento saluted Your Plaintiff as he left, and that was the last Your Plaintiff saw of Benny Vento. Penny Vento comes on Your Plaintiff's property unannounced soliciting information. Your Plaintiff always wondered why they came onto Plaintiff's Department of Veterans Affairs mortgaged property unannounced as if they owned the property. Plaintiff understands now because he's a second class citizen - giving ordinary citizens with access and protected liberty interests the ability and feeling they can infringe on others protected liberty interest with no recourse for redress. They Laugh. But Plaintiff does state that Social Services went to Penny Vento's house a few times, And the ambulance came days before he died because "he fell" - but Penny Vento questions me, because I'm the Muslim and she has access. Like George Keller, Benny knew the answers to the questions he asked before he asked. Acc-Cess. AX. Cess.

93.    On information and belief, Benny Vento told Phillip Salmeri the seller of the property that Your Plaintiff was on the "watchlist". When Phillip Salmeri finally got his overpaid check, he came to the property, unannounced, to "congratulate" Plaintiff and let know it was now Plaintiff's, although closing was two weeks prior. He also stated to Plaintiff, "I told them He's a Marine, let him have a home, and mentioned the watch list".

Your Plaintiff was told By Special Agent Jesus Torres when you sign for the house it's yours. These gun carrying citizens also come on your Plaintiff's almost acre property as a Second Amendment citizens - Your Plaintiff did not apply for his second amendment right because he is Muslim - and has to cower to protect his family - after he paid everyone what they asked for *and more*.[7]

94.    Your Plaintiff has no recourse for rights in this country. On information and belief Penny Vento was soliciting information for Benny Vento, a licensed gun seller with the Bureau of Alcohol Tobacco, Firearms and Explosives.  I was surprised that Benny Vento's wife told Your Plaintiff's wife that Benny Vento asked for Plaintiff on his final days and passed away peacefully in the socks that Your Plaintiff gave him to warm his body. Benny Vento died on or about September 2021.

95.    Your Plaintiff is grateful to all the persons that helped him that are unable to be communicated to, to include Daniel King; Plaintiff credits the prayers of Daniel King in keeping him alive while in Quantico Brig A-Block and Wayne Mckenzie in the Quantico Brig A-Block who counseled Your Plaintiff as a caring father; Your Plaintiff is very grateful to the gentlemen who sleep on the streets of New York for giving care and conversation with Your Plaintiff when needed. Your Plaintiff thanks Affraz Mohammed for his

---

[7] The property was listed for 329K and Plaintiff offered 333K plus paid all closing costs and extended a Mortgage using Veteran's entitlement for a Veteran's Home Loan because Plaintiff believes in the energy distributed by repeating numbers.

encouragement and believes this Complaint is what was searching and asked of him.

96.    On Information and belief, when Your Plaintiff exercises his right under Title 38 and accesses military bases for MWR, Commissary, Unlimited Exchange Privileges, Your Plaintiff's consumer information of character, general reputation, personal characteristics returns the words of "suspected terrorist" upon query; prompting at times for military forces to come closer to Your Plaintiff in the ready position with their M16s on Quantico Marine Base - while also asking identifying questions consistent as if they are determining if Your Plaintiff is in possession of a counterfeited Uniformed Services Identification Card; because of this Your Plaintiff limits his privileges of purchasing commissaries.

97.    From The Beltway of Washington, to the Republic of Egypt; from Bay Ridge, Brooklyn to Chelsea, Manhattan; Outside, in Sunset Park, Midwood, Flatbush and Brownsville - Your Plaintiff has helped, enjoyed and contributed to the communities around him.

## ACTUAL DAMAGES

98.    Actual damages, which are also sometimes called compensatory damages, are designed to return the Plaintiff to the position they were in before they experienced an injury and loss. Plaintiff, therefore, has a responsibility to prove to the Court that they suffered a loss. Courts may award you compensation for: (a) Present and future medical bills (b) Lost

income and earning ability (c) Pain and suffering and emotional distress (d) Property damage (e) Damage to the relationship with your children, spouse, neighbors, community, character and repute. Plaintiff suffered irrevocable damages across all categories and not mentioned therein.

## ARGUMENT ON THE TSDB

99.    The **de facto** "Terrorist" Screening Database" *without* congressional statute.

The **de facto** "Terrorist" Screening Database" unlawfully implemented and not in accordance and not in a manner consistent with the provisions of the Constitution and is not applicable to any laws.

The **de facto** "Terrorist" Screening Database" does not protect the rights of all Americans in accordance with its Homeland Security Presidential Directive/HSPD–6.[8]

The **de facto** "Terrorist" Screening Database" is used as a tool for *animus nocendi* and *actus reus* by overzealous agents of government working in their capacity - making government always susceptible to liability.

The **de facto** "Terrorist" Screening Database" redress process through Homeland Security does not provide a constitutionally adequate remedy for a United States Citizen"  See. *Elhady vs Gable. See Eastern District of Virginia, Case No. 1:16-cv-00375-AJT-JFA.*

---

[8]"Maybe under here?"              "No, no weapons over there."
"Those weapons of mass destruction have got to be here somewhere."

The **de facto** "Terrorist" Screening Database" is the consumer report used to deny and obstruct Protected Liberty Interests.

The **de facto** "Terrorist" Screening Database" is the consumer report that is used to file procedural due process claims against overzealous agents in their capacity.

The **de facto** "Terrorist" Screening Database" is the consumer report that is also used to file subjective due process claims.

100.   Plaintiff  filed a redress request through DHS TRIP. and on coming through JFK Secondary Screening, Redress Control Number 2313143 resulting in it being told this is a customs issue. Customs is part of the Department of Homeland Security for the record. DHS TRIP redress provides insufficient processes for procedural due process claims, and instead This Honorable Court must conclude this process is totally illegal. **There is no redress**. **Troy Miller** the "Acting" Director is in charge of the **no uniform policy** Honorable Chief Judge Richardson speaks of during oral arguments on January 26, 2021 in the Fourth Circuit Court of Appeals in *Elhady vs Gable Case No. 20-1119.*

101.   15 U.S.C. § 1681s-2(b) Outlines a furnisher's duties following a dispute regarding the completeness or accuracy of a consumer's credit report  15 U.S.C. § 1681 prohibits data furnishers "from providing inaccurate information 'relating to a consumer to any consumer reporting agency' if the person knows or has reasonable cause to believe that the information is

**50**

inaccurate.'" 15 U.S.C. § 1681s-2(a)(1)(A). The furnishers of information illegally interrogated Your Plaintiff and still wouldn't send any dispute notifications results according to many statues in 15 U.S.C 1681

102.   Your Plaintiff filed FOIA requests 1457257-000 and many emails of the stalls Plaintiff was communicated they will be completed in over 2,000 days and Plaintiff couldn't expedite it.

103.   Being included on the Terrorist Screening Database is life altering and it is impossible to live in an included society since your movements, banking, and equal inclusion is always blocked, stopped, detained and destroyed.  It allows injustices that other citizens are not subjected to. It puts you in an ever-lasting propensity of being lower than second class. It gives the people access to the Database the power of tyranny without a check or balance. Even the out of  weight regulation agents that Plaintiff finds repulsive to look at he must endure.  It allows all others with lower competence and skills to be above you, while you help them. Your Plaintiff was never treated equally.

104.   Being included in the Terrorist Screening  Database means being designated as a "known and suspected terrorist", and has allowed a breeding ground against Your Plaintiff for physical abuse, mental abuse, medical malpractice, intimidation, abuses of process, abuses of federal procedures, breaches of contracts and fiduciary duties, mental torture and anguish, loss of income, loss of oppurtunity, unconstituional abuse to include deprivation

**51**

of basic human rights of equality, due process, right to protection, and cruel and unusal punishement from all agencies and persons with access to this consumer report.

105.  Being designated on the Terrorist Screening  Database means you are less than a second class citizen around the world and consistently puts you in harm's way with grave danger  without cause or knowing creating the most extreme unknown burden that may cause death. You constantly are told no, questioned, stopped free movement and deal with multiple personalities of unlawful treatment by the government and persons with access to these databases at home and abroad.

106.  The actions endured by Your Plaintiff in this complaint are overly unreasonable and burdensome and consistently torturous more than any just human can bear in accordance with basic human rights laws.  On Information and belief, all Defendants have access to the TSDB, and NCIC and all were able to process disputes of disputed accuracy according to federal law. All Defendants acted in a torturous manner with Your Plaintiff, which caused your Plaintiff physical and mental damages, financial damages and personal injury.

107.  Your Defendants violated and deprived constitutionally protected liberty interests, and breaches of fiduciary duties of epic and historic proportions that resulted in irreversible damage to Your Plaintiff.

108.  The Defendants violated and deprived on multiple occasions Plaintiff's

First, Second, Fourth, Fifth and Eighth Amendment Rights of the Constitution of the United States of America, and other federal statutes. Your Defendants have consistently denied Mohammad Ahmed's right to Life, Liberty and the Pursuit of Happiness while they violated many federally protected laws, and basic human rights.

109. The officers and agents of the United States of America consistently violated and deprived Plaintiff's Fourth Amendment right to unlawful search and seizures on numerous occasions through different federal and state agencies without offering procedural due process.

110. The medical doctors by direction of the Department of Veterans Affairs and Department of Defense violate the Eighth Amendment right for cruel and unusual punishment. Your Plaintiff is denied a Psycologist of his choosing for years, given forced prescriptions, and then sent to classes when others are speaking derogatories about "ragheads" and threats in the classs how they have access to guns. Your plaintiff is not allowed his right to speak like others, or receive their treatment. It is against federal law to intimidate anyone at any Department of Veterans Affairs  function.

111. Your Defendant's consistently violate Mohammad Ahmed's right to fifth amendment due process. The TSDB & NCIC allows uneducated, illicit, totalitarian mindset federal employees, local officials, and others with access to these databases, consumer reports, watchlists, to reflect their personalities through their actions subjecting the United States of America

with lawsuits of great proportions so its citizens may defend their basic human rights.

112.  Plaintiff has exhausted all means through all channels to  include multiple communications to the Department of Homeland Security and through their redress system,(which does not address the inclusion of the TSDB or NCIC or derogatory information), contacting Former Congressman Max Rose. , communicating over the phone and by facsimile with the office of Senator Gillibrand, and sending facsimiles to the Office of Senator Charles Schumer, and speaking by phone to the Office of Congresswoman Nicole Maliatakis, and many other persons, government agencies across different agencies of Government.

**A malifide *contra legem ab initio, ad infinitum, de facto disguised de jure.***

**<u>COUNT I</u>   Violation Fourth Amendment of the United States Constitution (Unreasonable Search and Seizure)                    1.**

"To establish a procedural due process violation under 42 U.S.C. § 1983, [a plaintiff] is required to demonstrate three elements: (1) that [he] had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that [he] was deprived of that protected interest within the meaning of the due process clause; and (3) that the state did not afford [him] adequate procedural rights before depriving [him] of its protected interest." *<u>Wedgewood L.P. I v. Twp. of Liberty</u>*, 610 F.3d 340, 349

(6th Cir. 2010).

2. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

3. Under the Fourth Amendment, United States citizens have the right to be free from unlawful search and seizure.

4.     The Fourth Amendment also imposes a duty on Defendants to provide humane conditions of confinement and or detainment, including ensuring, among other things, access to medical treatment.

5.     Defendants, acting under color of state law, took Plaintiff into physical detainment. In doing so, they established a special custodial relationship with Plaintiff, giving rise to affirmative duties on their part to ensure that Plaintiff is provided with humane conditions of detainment and the necessary medical treatment to secure the constitutionally protected rights identified above.

6.     Defendants, acting under color of state law, violated Plaintiff's above-stated constitutionally protected rights by wrongfully subjecting him to torture and cruel and unusual punishment while also denying him medical treatment.

7.     Despite Plaintiffs' repeated pleas and requests for help and medical treatment, Defendants failed to take adequate measures to ensure that Plaintiff was being provided with humane conditions medical treatment.

8.     Defendants subjectively perceived, or were in the capacity to have

55

subjectively perceived, Plaintiff's repeated pleas regarding the conditions of his detainment and denial of medical treatment.

9.    Defendants' acts and omissions were sufficiently harmful to evidence a substantial risk of serious harm.

10.    Defendants' acts and omissions were sufficiently harmful to offend evolving standards of decency in violation of the Fourth Amendment.

11.    Defendants' actions while acting under color of state law, in subjecting Plaintiff to torture, denying him humane conditions of detainment, and denying him medical treatment, amount to cruel and unusual punishment and excessive force in violation of his constitutionally protected rights as stated above.

12.    Defendants' conduct as outlined above, was so grossly incompetent, inadequate, or excessive so as to shock the conscience or to be intolerable to fundamental fairness and violates the Fourth Amendment prohibition against unlawful search and siezure.

13.    Defendants, acting under the color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of depriving Plaintiff wrongfully designated on the federal terror watch list without due process from humane conditions of detainment.

14. Defendants' actions described above were carried out willfully and with wanton disregard and with the spirit of gross negligence, and were the direct

56

and deliberate cause of the constitutional deprivations Plaintiff's liberty and the direct cause of Plaintiff's unlawful search and seizure and excessive force.

**COUNT II Violation of the Eighth Amendment to the United States Constitution (Cruel and Unusual Punishment)**

1.      Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

2.      Under the Eighth Amendment, United States citizens have the right to be free from Cruel and Unusual Punishment.

3.      The Eighth Amendment also imposes a duty on Defendants to provide humane conditions of confinement, including ensuring, among other things, access to medical treatment.

4.      Defendants, acting under color of state law, took Plaintiff into physical detainment. In doing so, they established a special custodial relationship with Plaintiff, giving rise to affirmative duties on their part to ensure that Plaintiff is provided with humane conditions of detainment and the necessary medical treatment to secure the constitutionally protected rights identified above.

5.      Defendants, acting under color of state law, violated Plaintiff's above-stated constitutionally protected rights by wrongfully subjecting him to torture and cruel and unusual punishment, denying him medical treatment.

6. Despite Plaintiffs' repeated pleas and requests for help and medical treatment, Defendants failed to take adequate measures to ensure that Plaintiff was being provided with humane conditions medical treatment.

7. Defendants subjectively perceived, or should have subjectively perceived, Plaintiff's repeated pleas regarding the conditions of his detainment  and denial of medical treatment.

8. Defendants' acts and omissions were sufficiently harmful to evidence a substantial risk of serious harm.

9. Defendants' acts and omissions were sufficiently harmful to offend evolving standards of decency in violation of the Eighth Amendment.

10. Defendants' actions while acting under color of state law, in subjecting Plaintiff to torture, denying him humane conditions of detainment, and denying him medical treatment, amount to cruel and unusual punishment and excessive force in violation of his constitutionally protected rights as stated above.

11. Defendants' conduct as outlined above, was so grossly incompetent, inadequate, or excessive so as to shock the conscience or to be intolerable to fundamental fairness and violates the Eighth Amendment prohibition against cruel and unusual punishment.

12. Defendants, acting under the color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of depriving Plaintiff wrongfully

designated on the federal terror watch list without due process from humane conditions of confinement.

13.    Defendants' actions described above were carried out willfully and with wanton disregard and with the spirit of gross negligence, and were the direct and deliberate cause of the constitutional deprivations Plaintiff's liberty and the direct cause of Plaintiff's cruel and unusual punishment and excessive force.

**COUNT III VIOLATION OF: Disclosures to governmental agencies 15 U.S.C. § 1681f**

1.    Plaintiff realleges each and every factual allegation above

2.    Defendants furnished identifying information an investigative report on Your Plaintiff that included "Terrorist Screening Database" and "Selectee" and "Suspected Terrorist"  Defendants disclosed to other persons, and private citizens an investigative consumer report including information on Your Plaintiff's character, general reputation, personal characteristics, and mode of living and other personal information.

3.    Defendants furnish identifying information respecting Your Plaintiff were only limited to his name, address, former addresses, places of employment, or former places of employment, to a governmental agency per 15 U.S.C. § 1681f **, not "suspected terrorist"**

4.    Due Defendants' illegal conduct Your Plaintiff had his rights violated, and has suffered actual and statutory damages, and under 15 U.S. Code §

1681n. Is entitled *inter alia*, to (B) actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater

5.      Due to Defendants' negligence in failing to comply with requirements imposed, Plaintiff is entitled *inter alia* to any actual damages by the consumer as a result of the failure and in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court 15 U.S. Code § 1681o.

**WHEREFORE,** Plaintiffs request this Honorable Court grant declaratory and injunctive relief, plus all such other relief this Court deems just and proper including costs and fees incurred in this action.

**WHEREFORE,** Plaintiff requests this Honorable Court grant compensatory and punitive damages against Defendants, plus all such other relief this Court deems just and proper including costs and fees incurred in this action.

**COUNT IV** **Violation of § 626. Disclosures to FBI for counterintelligence purposes 15 U.S.C. § 1681u  (g)  *Limit on dissemination.***

1.      Plaintiff realleges each and every factual allegation above

2.      The Defendant's may not disseminate information obtained pursuant to this section outside of the Federal Bureau of Investigation, except to other Federal agencies as may be necessary for the approval or conduct of a foreign counterintelligence investigation, or, where the information concerns a person subject to the Uniform Code of Military Justice, to appropriate

**60**

investigative authorities within the military department concerned as may be necessary for the conduct of a joint foreign counterintelligence investigation.

3.     The credit reporting agencies which include the Terrorist Screening Database  are only able to disclose identifying information limited to name, address, former addresses, places of employment, or former places of employment. But the credit reporting agencies also add the fields "suspected terrorist" which is not limited to name address, former addresses, places of employment or former places of employment. Your Plaintiff never lived at an address named "suspected terrorist", nor has Your Plaintiff ever been employed by "suspected terrorist".

4.     The Intelligence Bureau disseminates consumer reports with inaccurate information to other local agencies, and private companies, and other furnishers of information and resellers then furnish information to others.

5.     Therefore, FBI Terrorist Screening Database becomes, and is a consumer reporting agency, repository, and a reseller of information by definition and is not-compliant with this section. A person to whom disclosure is made under subparagraph (A) shall be subject to the nondisclosure requirements applicable to a person to whom a request under subsection (a) or (b) or an order under subsection (c) is issued in the same manner as the person to whom the request is issued.

6.     As a Result, of illegal dissemination, Your Plaintiff suffered actual damages by Defendants disseminating inaccurate, incorrect and unverifiable information to local counties, and private companies, and gun sellers to include, Your Plaintiff's character, general reputation, personal characteristics, and mode of living.

7.     Due to Defendants' illegal conduct Your Plaintiff had his rights violated, and has suffered actual and statutory damages, and under 15 U.S. Code § 1681n. Is entitled inter alia, to (B) actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater

**WHEREFORE,** Plaintiffs request this Honorable Court grant declaratory and injunctive relief, plus all such other relief this Court deems just and proper including costs and fees incurred in this action.

**WHEREFORE,** Plaintiff requests this Honorable Court grant compensatory and punitive damages against Defendants, plus all such other relief this Court deems just and proper including costs and fees incurred in this action.

**COUNT V**

**Violation of Procedures of Disputed accuracy 15 U.S.C. § 1681i**

1.     Defendants re-alleges all factual claims stated.

2.     Defendants violated 15 U.S.C. § 1681i which caused damages.

3.     Plaintiff is entitled to compensatory relief.

**WHEREFORE** Plaintiff Pleads for injunctive,declaratory,  relief and all other relief this Honorable Court deems just and proper.

62

**COUNT VII** **Violations of 15 U.S.C. § 1681l**

1.      15 U.S.C. § 1681l Whenever Defendant's prepare an investigative report, no adverse information in the report (other than information which is a matter of public record) may be included in a subsequent consumer report unless such adverse information has been verified in the process of making such subsequent consumer report, or the adverse information was received within the three-month period preceding the date the subsequent report is furnished.  Defendant Keller stated information that was not verified in the process of making.  The credit reporting agencies which include the Terrorist Screening Database are only able to disclose identifying information limited to name, address, former addresses, places of employment, or former places of employment. But the credit reporting agencies also add the fields "suspected terrorist" which is not limited to name address, former addresses, places of employment or former places of employment. Your Plaintiff never lived at an address named "suspected terrorist", nor has Your Plaintiff ever been employed by "suspected terrorist".

**COUNT VIII** **Violation of the Fifth Amendment to the United States Constitution**

1.      Defendants Violated and continually violate Plaintiff's Fifth Amendment Rights.

**COUNT IX** **Violation of the Fourteenth Amendment to the United States Constitution**

63

**1.**   Defendants Violated and continually violate Plaintiff's Fourteenth Amendment Rights.

**COUNT X**   **Violation of** 15 U.S.C. § 1681b (g)(1) )Limitation on consumer reporting agenciesA consumer reporting agency shall not furnish for employment purposes, or in connection with a credit or insurance transaction, a consumer report that contains medical information.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court enter Judgment in his favor against Defendants and enter an Order awarding the following relief:

1.   An Award of compensatory and punitive damages *ad quod damnum*;

2.   A Trial by Jury;

3.   An Injunctive and Declaratory Judgment declaring "The Terrorist Screening Database" *de facto* and unable to continue until deficiencies addressed.

4.   An Award of attorneys' fees, costs, and all expenses of all litigation; and,

5.   All such other and further relief as the Court may deem just and proper, *ad quod damnum*.

**JURY DEMAND**

NOW COMES Plaintiff, *pro se* hereby demands Trial by Jury of the above-referenced causes of action of all claims that can be so tried.

**64**

Plaintiff certifies that the above information is true and correct to the best of Plaintiff's knowledge of facts and perceived facts.

In Accordance with Federal Rules of Civil Procedure Rule 11: This Complaint is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law and by nonfrivolous arguments for extending, modifying, and reversing existing law and for establishing new law; (3) the factual contentions have evidentiary support, and other documents pertaining after a reasonable opportunity for further investigation and discovery.

Respectfully Submitted With,

**HONOR COURAGE COMMITMENT**

**/s/ Mohammad Mokhtar Ahmed**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on February 5, 2022.

**/s/ Mohammad Mokhtar Ahmed**
Mohammad Ahmed Plaintiff *pro se*

Mailing Address:

13242 Laurel Lane
King George, Virginia 22485
(703) 836-6200
CourtHearing1179@gmail.com